**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James H. GALLAHER, Jr.,
Defendant–Appellant.**

**No. 00–30068.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 2001

Filed Dec. 26, 2001

Kenneth K. Watts, Spokane, Washington, for the defendant-appellant.

Joseph H. Harrington, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Before: ALARCON, FERNANDEZ, TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Partial Concurrence and Partial Dissent by Judge ALARCON.

TASHIMA, Circuit Judge:

James H. Gallaher, Jr., a Colville Indian who resides in the Nespelem district of the Colville Indian Reservation, appeals from the judgment of conviction for the crime of possession of ammunition, after being convicted of a crime punishable by imprisonment for a term exceeding one year, as proscribed by 18 U.S.C. § 922(g)(1). He contends that the district court lacked subject matter jurisdiction under the May 9, 1891, agreement between the Colville Confederated Tribes and the United States (the "Colville Treaty").

'Gallaher also seeks reversal of his sentence as violative of the same treaty. He further contends that the district court erred in concluding that his 1985 conviction of second-degree assault constitutes a predicate offense under 18 U.S.C. § 924(e) because he received a Certificate and Order of Discharge on January 26, 1989 ("1989 Certificate") for that prior conviction. Finally, he asserts that the district court abused its discretion in prohibiting him from possessing any bows, crossbows,

and arrows, as a condition of his supervised release, contending that the restriction does not reasonably relate to his crime of conviction—felon in possession of ammunition.

We affirm the judgment of conviction, but vacate the sentence and remand for resentencing.

## I.

On June 21, 1999, Officer Joel Hand of the Colville Tribal Police Services responded to a report of an assault at a campground at Gold Lake in the Colville Indian Reservation. Officer Hand observed that the victim's ear had been "ripped apart from his head." The victim's nose was also broken. David Chewea, the victim of the assault, told Officer Hand that Gallaher had bitten his ear off. He also reported that Gallaher was armed with a .280 caliber rifle.

Officer Hand left Chewea in the care of medics and drove out on Gold Lake Road in search of Gallaher. He was instructed not to confront Gallaher until additional police units arrived to assist him. Officer Hand then stopped on the side of the road.

Approximately five minutes later, Gallaher drove by in a Ford pick-up truck. Officer Hand followed the truck until Gallaher activated his right-turn signal and parked on the side of the road. By this time, other police units had arrived. Officer Hand turned on his emergency lights. Gallaher stepped out of the pick-up truck. Officer Hand ordered him to stand with his back to the officers and hold his arms up with his palms facing the officer. Instead, Gallaher continued to stand facing Officer Hand with his hands in his pockets.

After repeated commands to remove his hands from his pockets, Gallaher did so. He moved his arms in an arc. Officer Hand observed Gallaher throw brass ammunition onto the ground. In searching the area, Officer Hand found 7 mm and .280 ammunition on the ground in the area where Gallaher was taken into custody.

Gallaher was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924, and for being a felon in possession of ammunition, also in violation of §§ 922(g)(1) and 924. After trial, Gallaher was acquitted on the firearm possession count, but found guilty of being a felon in possession of ammunition. Following the return of the jury's verdict, Gallaher moved to dismiss the indictment, arguing that the district court lacked subject matter jurisdiction because the Colville Treaty precluded the United States from taking away a Colville Indian's right to hunt and fish. The district court denied the motion to dismiss.

During the sentencing proceedings, Gallaher maintained that his 1985 conviction for second-degree assault did not qualify as a violent felony because he had received the 1989 Certificate restoring his "civil rights lost by operation of law upon conviction." The district court rejected this argument and enhanced his sentence accordingly. It found that he had been convicted of three, prior, violent felonies, including the 1985 assault conviction, and sentenced him under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), to 200 months' imprisonment and five years' supervised release, a significantly greater sentence than the sentencing range that would result absent the ACCA enhancement.[1] Gallaher also asserted that the

1. Without the ACCA enhancement, Gallaher faced a sentencing range of 84–105 months. Gallaher's offense was level 24, under U.S.S.G. § 2K2.1(a)(2). The court, however, granted him a two-level downward adjustment for acceptance of responsibility, under § 3E1.1. The resulting, level 22 sentencing

district court lacked the authority to order him not to use bows and arrows because it would interfere with his right to hunt under the Colville Treaty. The district court did not agree.

Gallaher filed a timely appeal from the judgment of conviction and his sentence. We have jurisdiction under 28 U.S.C. § 1291.

## II.

■ Gallaher first contends that the district court lacked subject matter jurisdiction because the Colville Treaty expressly bars the United States from taking away or abridging a Colville Indian's right to hunt and fish. In support of this contention, he points to the Colville Treaty's provision that "the right to hunt and fish in common with all other persons on lands not allotted to said Indians shall not be taken away or in anywise abridged." Colville Treaty, May 9, 1891, Art. 6, *reprinted in* 23 Cong. Rec. 3837–40 (1892); *see Antoine v. Washington*, 420 U.S. 194, 198–200, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975) (stating that the Colville Treaty was implicitly ratified by a series of authorizing statutes from 1892to 1911). Gallaher contends that he is exempt from the application of § 922(g)(1), notwithstanding his status as a felon, because Congress did not expressly abrogate the hunting and fishing provisions of Article 6 of the Colville Treaty in making it a federal crime for a felon to possess guns or ammunition. We review *de novo* a district court's assumption of jurisdiction. *United States v. Bennett*, 147 F.3d 912, 913 (9th Cir.1998).

■ Federal courts have jurisdiction over enumerated offenses committed by Indians pursuant to the Indian Major Crimes Act, 18 U.S.C. § 1153. Section 1153 provides in relevant part:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under Chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury . . ., an assault against an individual who has not attained the age of 16 years, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

18 U.S.C. § 1153(a). The Indian Major Crimes Act, however, is not the exclusive basis for federal jurisdiction over Indians, as we have rejected the "contention that Indians may not be 17282 charged for *any* criminal conduct beyond those crimes enumerated in § 1153. . . . [T]he [Indian] Major Crimes Act [ ] deals only with the application of federal enclave law to Indians and has no bearing on federal laws of nationwide applicability that make actions criminal wherever committed." *United States v. Juvenile Male*, 118 F.3d 1344, 1350–51(9th Cir.1997) (alterations and emphasis in the original) (quoting *United States v. Begay*, 42 F.3d 486, 498 (9th Cir.1994)). We have previously determined that 18 U.S.C. § 922(g) is a federal statute of general applicability. *United States v. Young*, 936 F.2d 1050, 1055 (9th Cir.1991).

■ Gallaher argues that § 922(g)(1) nonetheless cannot apply to him because it would impermissibly abrogate rights guaranteed to him as a Colville Indian by the Colville Treaty. We reject this contention. In order to exempt tribal members from a federal law of otherwise general applicabil-

range, for Gallaher's criminal history category, VI, is 84–105 months.

ity, the treaty itself must specifically so provide. *United States v. Sohappy*, 770 F.2d 816, 820 (9th Cir.1985); *United States v. Burns*, 529 F.2d 114, 117 (9th Cir.1975). The Colville Treaty contains no such specific, limiting language.

The Seventh Circuit rejected a similar argument in *United States v. Three Winchester 30–30 Caliber Lever Action Carbines*, 504 F.2d 1288 (7th Cir.1974). In that matter, an Indian defendant contended that he was exempt from criminal liability under 18 U.S.C. § 1202(1)(a), the predecessor statute to § 922(g), because a state law regulating hunting and fishing rights had been held unenforceable against Indians. *Id.* at 1292. The court reasoned:

> [F]ederal laws of general applicability ... have nothing to do with the regulation of any ... Indian treaty right. Any effect on the defendant's right to hunt is merely incidental, and applicable only to him. The treaty rights allegedly abridged belong to the tribe as a whole and not to any one individual.

*Id.* The court explained further that "the government has not made the exercise of the treaty right illegal, but rather the defendant's own actions have limited him from participating fully in his tribe's hunting rights." *Id.* We adopted the Seventh Circuit's rationale in *Burns*.

In *Burns*, the appellant was an Indian employed by the Shoshone–Bannock Tribe as a tribal game warden. 529 F.2d at 116. The appellant and another tribal game warden stopped a party of non-Indians who had trespassed onto the Fort Hall Indian Reservation for the purpose of crossing over onto public land. *Id.* An argument ensued. *Id.* The appellant brandished an automatic pistol in his possession. *Id.* He was convicted of being a felon in unlawful possession of a firearm, formerly codified at 18 U.S.C. § 1202(a),

and assault with a dangerous and deadly weapon, in violation of 18 U.S.C. § 1153 and Idaho Code § 18–906. *Id.*

On appeal, the appellant argued that "the trial court had no jurisdiction to try an alleged violation of [the felon-in-possession statute], where committed by an Indian on an Indian reservation." *Id.* "[B]y treaty and tribal law," the defendant contended, "the task of preventing trespass ... upon the reservation was in the hands of the tribal council. The council could select whomever it wished as game wardens...." *Id.* We disagreed and held that the appellant was subject to the felon-in-possession statute. *Id.* at 117. We concluded that "[t]he government [did] not infringe upon the right of the Shoshone–Bannock Tribal council to appoint game wardens and to authorize them to carry firearms. Burns is merely precluded from possessing a firearm because of his previous felony conviction." *Id.*

Here, Gallaher lost his right as a Colville Indian to hunt by committing felony crimes. The effect that § 922(g)(1) had on his ability to possess ammunition was an incidental result of his criminal conduct. We hold that the district court had subject matter jurisdiction over this matter.

### III.

■ Gallaher contends that the district court erred in sentencing him under the ACCA. He argues that his 1985 Washington state conviction for second-degree assault cannot be considered as a predicate violent felony for purposes of enhancing his sentence under 18 U.S.C. § 924(e) because of his 1989 Certificate. He argues that under *United States v. Herron*, 45 F.3d 340 (9th Cir.1995), whether his right to possess firearms or ammunition was restored in 1989 is controlled by the express provisions of the 1989 Certificate

and not by the provisions of any inconsistent Washington statute. We review *de novo* a district court's conclusion that a prior conviction may be used as a sentencing enhancement. *United States v. Phillips*, 149 F.3d 1026, 1031 (9th Cir.1998).

In *Herron*, the defendant was convicted of the crime of second-degree burglary in a Washington state court. *Herron*, 45 F.3d at 340. He was sentenced to serve a year and a day. *Id.* After he was discharged from imprisonment, Herron received a Certificate and Order of Discharge from the State of Washington:

### CERTIFICATE & ORDER OF DISCHARGE

This matter having come on regularly before the above entitled court pursuant to RCW 9.94A.220, the court having been notified by the Secretary of the Department of Corrections or his designee that the above named defendant has completed the requirements of his/her sentence, and there appearing to be no reason why the defendant should not be discharged, and the court having reviewed the records and file herein, and being fully advised in the premises, Now, Therefore,

*IT IS HEREBY CERTIFIED* that the defendant has completed the requirements of the sentence imposed. *IT IS HEREBY ORDERED* that the defendant be DISCHARGED from the confinement and supervision of the Secretary of the Department of Corrections.

*IT IS FURTHER ORDERED* that the defendant's civil rights lost by operation of the law upon conviction be *HEREBY RESTORED.*

*Herron*, 45 F.3d at 341 n. 1. While the certificate stated that the rights lost by reason of Herron's conviction were restored, it made no reference to the possession of firearms. *Id.* at 341.[2]

Subsequent to the date Herron received his certificate, he was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* The district court dismissed the indictment on the basis that the government failed to allege facts demonstrating that Herron could not possess a firearm because the certificate restored his civil rights and did not expressly inform Herron that he could not possess a firearm. *Id.*

We affirmed in *Herron*, concluding that the appellant's prior state conviction could not be considered as an element of the crime proscribed by § 922(g)(1) because his civil rights were restored to him pursuant to the terms of the certificate. *Id.* at 341–43. In reaching this conclusion, we construed the definition of a crime punishable by imprisonment exceeding one year contained in 18 U.S.C. § 921(a)(20). *Id.* at 341. Section 921(a)(20) reads in pertinent part as follows:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Adopting a "plain, literal interpretation" of this statutory language, *id.* at 343, we looked simply to whether the document restoring Herron's civil rights expressly provided for firearms restrictions. Since it

---

**2.** The wording of Gallaher's 1989 Certificate is identical to Herron's certificate.

did not, we held: "That should be the end of the case." *Id.* at 341.[3]

The government argued in *Herron* that "the certificate will not protect [Herron] from the federal conviction, if other provisions in state law limit the felon's right to possess firearms." *Id.* at 342. The government noted that Herron was barred from possessing a pistol under Washington law because he had been previously convicted of a "crime of violence." *Id.; see* Wash. Rev.Code Ann. § 9.41.040(1) (West 1998).

In rejecting the government's argument that we should look to the whole of state law for limitations on the restoration of civil rights, we relied on the following dicta from the Seventh Circuit's decision in *United States v. Erwin,* 902 F.2d 510 (7th Cir.1990):

> The second sentence of § 921(a)(20) is an anti-mousetrapping rule. If the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher.

*Herron,* 45 F.3d at 343 (quoting *Erwin,* 902 F.2d at 512–13) (emphasis in the original). We concluded in *Herron* that it would raise due process concerns if "we should look to the whole of state law for limitations on the restoration of civil rights, even where an unqualified certifi-

cate purports to restore them fully." *Id.* at 342.

It is quite clear, however, that even though this court adopted the anti-mouse-trapping rationale in *Herron,* that decision plainly turned on a textual interpretation of § 921(a)(20):

> [T]he federal statute makes these state statutory qualifications irrelevant as a matter of law. The federal statute tells us what to read to look for qualifications on a felon's restoration of civil rights. Congress has told us to read "such … restoration." Herron's restoration is his certificate. The certificate does not contain the gun restriction denoted in the federal statute, or any other qualifications which would make the restoration less than substantial.

*Id.* Application of § 921(a)(20), then, is relatively straightforward. If, after completing a criminal sentence, an individual's civil rights have been restored, this court must look to the restoration certificate (or other mode of civil rights restoration) to see if it contains an express firearm prohibition. If no such express prohibition exists, § 921(a)(20) bars consideration of that conviction under the ACCA's sentencing enhancement provisions.

Our recent decision in *United States v. Laskie,* 258 F.3d 1047 (9th Cir.2001), decided after this case was submitted, also confirms this textual reading of § 921(a)(20). In *Laskie,* the defendant pled guilty in Nevada state court to pos-

---

**3.** In finding the ACCA applicable to Gallaher, the district court apparently concluded that *Herron* was overruled by the Supreme Court in *Caron v. United States,* 524 U.S. 308, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998). This, however, is incorrect. *Caron* held only that if a state restores a defendant's civil rights regarding a prior violent felony conviction by operation of law, and if, by that operation of law, allowed the defendant to possess rifles or shotguns, *but not* handguns, use of that prior

conviction is not barred by 18 U.S.C. § 921(a)(20). This holding leaves *Herron* unaffected. Unlike *Caron,* the actual restoration of civil rights in *Herron* did not expressly prohibit the shipment, transportation, possession, or receipt of any firearms. Consequently, while the underlying violent felony conviction at issue in *Caron* could be considered for ACCA enhancement, the underlying felony conviction in *Herron* could not, and *Herron* remains good law.

session of a controlled substance, a felony. *Id.* at 1048. He was given a suspended sentence of two years, with three years' probation. *Id.* After completing his probation, the defendant applied for and received a document from the state labeled an "Order Honorably Discharging Probationer." *Id.* at 1048–49. The order provided, in relevant part:

> IT IS THEREFORE ORDERED that the previous finding of Guilty be changed to that of Not Guilty, and the Information herein dismissed.
>
> IT IS FURTHER ORDERED that said Defendant be, and is hereby discharged from supervision and released from all penalties and disabilities resulting from the crime of which he has been convicted.

*Id.* at 1049.

The defendant was subsequently indicted for being a felon in possession of a firearm, in violation of § 922(g)(1). *Id.* He moved to dismiss the indictment, arguing that the discharge order made him ineligible for prosecution under § 922(g)(1). *Id.* The district court held that, under Nevada law, "an honorable discharge from probation does not, of itself, restore the right to possess firearms." *Id.* The defendant appealed and we reversed.

We explained that where a felon has had his civil rights restored "by a certificate or other written document, then the express reservation [prohibiting the possession of

firearms] must be contained in the document itself" in order to support a prosecution under § 922(g)(1). *Id.* at 1050(citing *Herron,* 45 F.3d at 343). We held that even if a state prohibits a felon who has had his civil rights restored from possessing a firearm, "a conviction under § 922(g)(1) *is still precluded* if: (1) the 'pardon, expungement, or restoration of civil rights' occurred by a certificate and (2) the state did not expressly inform the defendant that he could not possess a firearm." *Id.* at 1052 (quoting *Herron,* 45 F.3d at 343) (emphasis in original). We further noted that the defendant had "received only a single discharge order, which said nothing about further steps that he was required to take to have his rights restored." *Id.* at 1052. We concluded that the defendant's unequivocal discharge for his earlier conviction "means that the conviction cannot serve as a predicate felony for a conviction under 18 U.S.C. § 922(g)(1)." *Id.*

■ Under our decisions in *Laskie* and *Herron,* a criminal defendant cannot be charged with a federal crime after receiving a certificate restoring his civil rights that contains no express warning that he cannot possess firearms in spite of the restoration of his civil rights or that his state conviction may constitute an element of a crime if he is found in possession of a weapon.[4] This plain reading of the statute applies with

---

**4.** The dissent suggests that *Herron* and *Laskie* "address a totally different question" than the one presented here—while *Herron* and *Laskie* considered whether an expunged, prior state conviction can be used as an element of a crime, *Gallaher* involves whether such a prior conviction can be used for sentencing enhancement purposes. This factual difference, however, is of no legal consequence because we are construing the same statute here as in *Herron.* The simple, straightforward question posed in all three cases is whether the restoration certificate expressly prohibited the

shipment, transportation, possession, or receipt of firearms. The answer to that question here, as in *Herron* and *Laskie,* is no. While it may be true that the 1989 Certificate refers to RCW 9.94A.220, the Washington statute that permits sentencing enhancement, it is uncontested that the 1989 Certificate does not expressly prohibit the possession of firearms, nor does § 9.94A.220 itself expressly prohibit the possession of firearms. Thus, under a plain reading of § 921(a)(20), *Herron,* and *Laskie,* Gallaher's 1985 assault conviction

equal force in Gallaher's situation, where a discharged offense is used to enhance a sentence rather than to establish an element of a crime. *See United States v. Palmer*, 183 F.3d 1014, 1017 (9th Cir.1999) ("Chapter 44 includes both § 922 and § 924, which sets out maximum sentences for offenses under this chapter. Accordingly, [the language] 'for purposes of this chapter' [found in 18 U.S.C. § 921(a)(20) ] clearly includes sentencing."). Even assuming, as does the dissent, that Gallaher knew or should have know that other provisions of state law prohibited him from possessing some firearms, despite the 1989 Certificate, and thus should not be entitled to the benefit of any anti-mousetrapping rule, the text of § 921(a)(20) is plain. We conclude that because Gallaher's discharge certificate contained no express prohibition against possessing firearms or ammunition, his discharged offense "shall not be considered a conviction," under §§ 921(a)(20) and 924(e). To conclude otherwise would be contrary to the plain wording of the statute.

Because the State of Washington provided Gallaher with the identical discharge certificate that it had provided Herron, the same statutory analysis that we applied in *Herron* applies here. Section 921(a)(20) instructs that a discharged offense is not a "conviction" under the firearm provisions of Chapter 44 when the discharge certificate does not "expressly provide that the person may not ship, transport, possess, or receive firearms." Since Gallaher's 1989 Certificate contains no such express prohibition, his 1985 assault conviction cannot be treated as a "conviction" for purposes of Chapter 44, which includes the ACCA. Therefore, it was error to enhance his

cannot be considered a predicate offense under the ACCA. And it is § 921(a)(20) that speaks directly to and controls the reading of

sentence under § 924(e) based on this discharged conviction.

## IV.

Finally, Gallaher contends that the district court abused its discretion in imposing condition 17 as condition of his supervised release. Condition 17 provides that, "the defendant shall not possess any firearms or other dangerous weapons, including but not limited to any bows and arrows or crossbows." Gallaher asserts that this condition is not reasonably related to the nature and circumstances of the offense for which he was convicted. He notes that his conviction for being a felon in possession of ammunition did not involve the use of a bow, arrow, or a crossbow. Gallaher also contends that condition 17 is unrelated to his personal history or characteristics. He contends that there is no evidence on the record that he has ever used a bow and arrow to harm another human being. He argues that condition 17 "involves greater deprivation of liberty than is reasonably necessary for the purposes set forth in [the] sentencing guideline factors and thus is prohibited by U.S.S.G. § 5D1.3(b)(2)."

██ We review a district court's decision to impose a special condition of supervised release for an abuse of discretion. *United States v. Pinjuv*, 218 F.3d 1125, 1129 (9th Cir.), *cert. denied*, 531 U.S. 1025, 121 S.Ct. 597, 148 L.Ed.2d 511 (2000). A district court has discretion to order special conditions of supervised release pursuant to 18 U.S.C. § 3583(d), if the conditions are reasonably related to the factors set forth in 18 U.S.C. § 3553(a). *United States v. Fellows*, 157 F.3d 1197, 1203 (9th Cir.1998).[5] The factors listed in § 3353(a),

the 1989 Certificate, not Wash. Rev.Code § 9.94A.220.

5. Section 3553(a) states, in relevant part:

however, merely "guide the district court's discretion" and do not act as "a checklist of requisites, each of which must be found before any condition of supervised release may be prescribed." *United States v. Johnson,* 998 F.2d 696, 698 (9th Cir.1993).

■ Gallaher was convicted of committing a violent assault, which included ripping the victim's ear from his head and breaking his nose. The presentence report disclosed that Gallaher had previously been convicted of second-degree assault while armed with a deadly weapon, fourth-degree assault and resisting arrest, simple assault, second degree robbery, and abusive sexual contact with a minor under the age of twelve.

The record also shows that Gallaher had killed a 500– pound bear by using a 75–pound adjustable Fast Flight graphite bow, and had killed five cougars using his crossbow. This evidence of Gallaher's violent present and past behavior and his ability to kill large animals with deadly proficiency is sufficient to demonstrate that he poses a threat to others and that there is a need to protect the public from further crimes involving his use of a dangerous weapon. Moreover, condition 17 is in accord with the Sentencing Guidelines' recommended special condition of supervised release in cases of this kind "prohibiting the defendant from possessing a firearm *or other dangerous weapon."* U.S.S.G. § 5D1.3(d)(1)(emphasis added). Condition 17 is also reasonably related to the factor set forth in § 3553(a)(2)(C) to be considered in imposing a sentence, namely, "to protect the public from further crimes of the defendant." The district court did not abuse its discretion.[6]

## CONCLUSION

We conclude that the Colville Treaty did not deprive the district court of subject matter jurisdiction and thus affirm the conviction. We hold, however, that the district court erred in using the 1985 conviction to enhance Gallaher's sentence under the ACCA, and therefore vacate the sentence and remand for resentencing. We further hold that the district court's imposition of condition 17 as a condition of supervised release was not an abuse of discretion.

**Conviction AFFIRMED, sentence VACATED and REMANDED for resentencing.**

ALARCON, Circuit Judge, concurring and dissenting:

I concur in Parts I, II, and IV of the opinion.

I respectfully dissent from Part III of the opinion.

---

Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant. . . .
18 U.S.C. § 3553(a).

**6.** Gallaher's contention that the district court lacked the authority to impose supervised release condition 17 because it interferes with his treaty right to hunt fails for the same reasons that his challenge to the district court's subject matter jurisdiction fails. *See* Part II, *supra.*

The majority has concluded that the district court erred in enhancing Gallaher's sentence pursuant to 18 U.S.C. § 924(e) because the certificate and order of discharge he received in 1989 ("1989 Certificate"), based on his conviction in 1985 for second-degree assault, does not expressly prohibit the possession of firearms. The majority cites our decisions in *United States v. Herron,* 45 F.3d 340 (9th Cir. 1995), and *United States v. Laskie,* 258 F.3d 1047 (9th Cir.2001), in support of this proposition. As I explain below, these cases are not dispositive because they address a totally different question: Can a prior state conviction be used *as an element of the crime of being a felon in possession of a firearm* in violation of 18 U.S.C. § 922(g)(1) where the accused has received a certificate and order of discharge that does not prohibit the possession of weapons?

We did not consider in *Herron* or *Laskie* the discrete question presented in this appeal: Whether Gallaher's sentence for being a felon in possession of a firearm can be enhanced based on his 1985 state conviction for second-degree assault in view of the fact that the 1989 Certificate did not expressly state that his prior record could be used to enhance his sentence for later offenses?

The 1989 Certificate that Gallaher received expressly stated that it was being issued "pursuant to RCW 9.94A.220." Section 9.94A.220 of the Revised Code of Washington[1] provides, in relevant portion:

Except as [otherwise] provided in ... this section, the discharge shall have the effect of restoring all civil rights lost by operation of law upon conviction, and the certificate of discharge shall so state. *Nothing in this section prohibits the use of an offender's prior record for pur-*

*poses of determining sentences for later offenses as provided in this chapter.* ... A certificate of discharge is not based on a finding of rehabilitation.

Wash. Rev.Code § 9.94A.220(3) (emphasis added). While the certificate received by the defendant in *Herron* also referred to § 9.94A.220, that Washington statute does not provide that a felon cannot possess firearms. Notwithstanding his discharge, the defendant in *Herron* was prohibited from possessing firearms by § 9.41.040(1) of the Revised Code of Washington. Section 9.41.040(1) was not referred to in the certificate and order of discharge received by Herron. *Herron,* 45 F.3d at 342. Thus, the defendant in *Herron* could reasonably complain he had been mousetrapped because (1) the certificate he received led him to believe he could legally possess a firearm, and (2) he was subsequently convicted by the federal government of possessing a firearm in violation of § 922(g)(1) "on the basis that the state misinformed him." *Id.*

Section 9.94A.220 expressly provides that a certificate and order of discharge does not "prohibit[ ] the use of an offender's prior record for purposes of determining sentences for later offenses." Wash. Rev.Code § 9.94A.220(3). Unlike the defendant in *Herron,* therefore, Gallaher had notice that the 1989 Certificate he received would not prohibit the use of his 1985 conviction for the purpose of enhancing his sentence for a future offense. Gallaher cannot justifiably complain that he was mousetrapped.

Gallaher offers no support for the view that incorporation of a prohibition to possess weapons in the 1989 Certificate by reference does not satisfy the "fair notice" requirement of § 921(a)(20) explained in

---

**1.** This section has been recodified as § 9.94A.637 of the Revised Code of Washing-ton. Wash. Rev.Code § 9.94A.637(3) (containing the language quoted herein).

*Herron* and *Laskie.* So long as a state provides express notice in a certificate that a felon's civil rights have not been unqualifiedly restored, it should not make a difference whether the state lists its qualifications in the certificate itself or by reference to another document. *See United States v. Simpson,* 27 F.3d 355, 356–57 (9th Cir.1994) (finding no unfair surprise to a felon prosecuted under § 922(g)(1) after receiving a certificate, where the felon failed to apply to the Department of Probation to restore his civil rights as required by state statute and had been notified of the statutory requirements in papers accompanying his certificate). In either case, the state has put a felon on notice that *not all* his civil rights have been restored. In *Herron,* the certificate and order of discharge did not cite the statute that prohibited a felon from possessing a pistol. Thus, the defendant in that case was not on notice that hidden somewhere "in a corner of the state's penal code" was a limitation on his civil rights. *Herron,* 45 F.3d at 343(quoting *United States v. Erwin,* 902 F.2d 510, 512–13 (7th Cir.1990)). The due process concerns underlying our holdings in *Herron* and *Laskie* are inapplicable to Gallaher's case.

It is quite true that the 1989 Certificate did not quote the text of § 9.94A.220(3) of the Revised Code of Washington. Thus, Gallaher may have been ignorant of its provisions when he violated § 922(g)(1). A felon's ignorance of the law or a mistake regarding the requirements of the law, however, does not violate the notice requirements of the Due Process Clause of the Fifth Amendment. "The common-law rule that every person is presumed to know the law 'has been applied ... in numerous cases construing criminal statutes,'" including prosecutions for possession of firearms. *United States v. Hancock,* 231 F.3d 557, 561 (9th Cir.2000), *cert.*

*denied,* 532 U.S. 989, 121 S.Ct. 1641, 149 L.Ed.2d 500 (2001) (quoting *Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (citations omitted)). Thus, Gallaher had constructive notice that a certificate and order of discharge does not "prohibit[ ] the use of an offender's prior record for purposes of determining sentences for later offenses." It follows that the district court did not err in counting Gallaher's 1985 assault conviction as a predicate felony for purposes of enhancing his sentence under § 924(e).

Gallaher argues that this case is controlled by *United States v. Palmer,* 183 F.3d 1014 (9th Cir.1999). This court's decision in *Palmer* is readily distinguishable, both factually and legally.

The defendant in *Palmer* was convicted in 1989 of possession with intent to distribute marijuana. *Id.* at 1015. In *Palmer,* federal agents subsequently executed a search warrant on the defendant's home. *Id.* at 1016. Inside, agents discovered a .38 caliber pistol. *Id.* In a mobile home located on the defendant's land, agents also found four handguns, one of which had been stolen, and twelve marijuana plants. *Id.* The defendant pled guilty to one count of possession of a firearm by a felon in violation of § 922(g)(1). *Id.* The district court sentenced him to the statutory maximum. *Id.* He appealed from the court's sentencing decision. *Id.* He argued before this court that the district court erred in considering his 1989 marijuana conviction in determining his base offense level because his civil rights had been restored. *Id.* We agreed and vacated the defendant's sentence. *Id.* at 1017–18.

In calculating the defendant's base offense level, the district court in *Palmer* relied in part on Application Note 10 to U.S.S.G. § 4A1.2. *Id.* at 1017. Application Note 10 states that:

A number of jurisdictions have various procedures pursuant to which previous

convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, *e.g.,* in order to restore civil rights or to remove the stigma associated with a criminal conviction. *Sentences resulting from such convictions are to be counted.* However, expunged convictions are not counted. § 4A1.2(j).

*Id.* (emphasis in original) (quoting U.S.S.G. § 4A1.2 cmt. n.10).

We concluded in *Palmer* that Application Note 10 was in conflict with the rule contained in § 921(a)(20) that "[a]ny conviction ... for which a person ... *has had civil rights restored shall not be considered a conviction for purposes of this chapter.*" *Id.* (emphasis in original) (quoting 18 U.S.C. § 921(a)(20)). We held that "[b]ecause the relevant Sentencing Guidelines for firearms offenses require the counting of convictions where a defendant's civil rights have been restored, and 18 U.S.C. § 921(a)(20) forbids such use, the statute controls." *Id.* at 1018.

We did not indicate in *Palmer* the manner in which the state of Washington restored the defendant's civil rights, nor did we set forth the text of the words used in the certificate, order, or pardon. Thus, one cannot discern from reading *Palmer* whether the restoration of civil rights was unqualified. In reciting the pertinent factual and procedural background, we merely stated that "the state of Washington had restored his civil rights for that conviction." *Id.* at 1015. Furthermore, in *Palmer,* we did not cite *Herron,* decided four years earlier, nor did we discuss the effect of a restoration of civil rights by means of a certificate and order of discharge issued by a Washington court, and the continuing limitation on a defendant's civil rights contained in § 9.94A.220(3). Here, by contrast, Gallaher received a certificate and order of discharge that in-

formed him that the restoration of his civil rights was pursuant to § 9.94A.220(3) of the Revised Code of Washington. Section 9.94A.220(3) provides notice to a convicted felon that a certificate and order of discharge will not prevent the use of a prior conviction for sentencing purposes. Gallaher had constructive notice that the civil rights lost by virtue of his 1985 conviction were not fully restored. *Palmer* does not support Gallaher's contention that he was not provided with proper notice in the 1989 Certificate, that his 1985 conviction would be considered in enhancing his sentence if he subsequently committed crime.

I would affirm the district court's decision. It did not err in using the 1985 conviction to enhance Gallaher's sentence under the ACCA.