**STATE of Minnesota, Respondent,**

v.

**Russell SHABAIASH, et al., Appellants.**

**No. C4–91–1485.**

Court of Appeals of Minnesota.

May 26, 1992.

Hubert H. Humphrey, III, Atty. Gen., Stephen B. Masten, Sp. Asst. Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., John E. DeSanto, Asst. Co. Atty. Duluth, for respondent.

Wesley R. Martins, Indian Legal Assistance Program, Duluth, for appellants.

Considered and decided by LANSING, P.J., and NORTON, and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellants challenge their convictions on misdemeanor charges related to spear fishing, alleging that they are entitled to exercise, as individuals, fishing rights under the 1854 treaty with the Chippewa of Lake Superior. We disagree and affirm.

## FACTS

*Chippewa–Government Agreements*

The parties agree that the Chippewa of Lake Superior, which entered into the 1854 treaty with the United States Government, consisted of three bands of Chippewa, now

known as the Grand Portage, Fond du Lac, and Bois Forte bands.[1]

Article 11 of the 1854 treaty provides that the Chippewa of Lake Superior that "reside in the territory hereby ceded, shall have the right to hunt and fish therein." As a result of that language, the Grand Portage band sued the State of Minnesota in federal district court, in 1985, seeking a declaratory judgment regarding the rights retained to them under this language.

In 1987, the case was removed from the trial calendar to allow time to negotiate and ratify a settlement agreement, which was to include the Fond du Lac and Bois Forte bands as well. According to the memorandum and order of U.S. District Court Judge Harry MacLaughlin, dated June 8, 1988, the band governments and state officials ratified a final agreement and filed it with the court on February 16, 1988. The Minnesota Legislature also ratified the agreement, which the Governor signed on April 14, 1988.

The agreement specifies that:

All rights, duties, and privileges recognized or granted by this Agreement are exclusively the property of the Three Bands and not of any individual member thereof.

Further, the agreement provides that the agreement is non-assignable and that the rights recognized are non-delegable. The agreement defines "band member" as

an Indian who is duly enrolled in the Minnesota Chippewa Tribe and duly enrolled as a member of one of the Three Bands.

In return for annual payments, the bands agreed not to exercise the hunting and fishing rights claimed under the 1854 treaty; rather, they would exercise any hunting, fishing, and gathering rights under conservation codes promulgated by the band governments after approval by the State of Minnesota. These codes coordinate with and are nearly identical to state law. They also provide for the cross-depu-

tization of band conservation officers and state conservation officers, with band members to be tried in band courts for violations of band codes, and non-members to be tried by state courts for violations of state law.

The final agreement provided for withdrawal from the agreement after written notice. The Fond du Lac band withdrew under this provision, but kept in place the conservation code developed under the agreement.

*Spear Fishing Incident*

On May 1, 1990, at about 9:30 p.m., two groups of Chippewa arrived at Nichols Lake in St. Louis County, each with a canoe. The persons in the first canoe were members of the Fond du Lac band of Chippewa who had been issued a special ceremonial permit by the band, allowing them to spear fish that night.

Appellants Russell Shabaiash and Jacob Greensky, along with Damian LaPrairie, entered the other canoe. Shortly thereafter, Minnesota conservation officers observed their use of an artificial light to search the waters for fish, while one of them held a spear. The Minnesota conservation officers arrested appellants and charged them with misdemeanor violations of state law regarding the taking of fish.

Appellants were enrolled in bands of Chippewa not parties to the 1854 treaty. Although they were eligible to become enrolled in the Fond du Lac band, they were not enrolled prior to the incident at issue. LaPrairie apparently belonged to the Fond du Lac band and was charged with violations of the band's conservation code by conservation officers of the band.

Appellants challenge these misdemeanor charges, claiming they are entitled to exercise fishing rights under the 1854 treaty.

## ISSUE

Did the trial court err in holding that appellants were not entitled to exercise

---

1. The treaty of 1854 mentions that the Chippewa of the Mississippi also agreed to the cession of land and agreed that all consideration be paid to the Chippewa of Lake Superior. An 1855 treaty with the Chippewa of the Mississippi specifies that they thereby ceded any interest in land in Minnesota.

hunting and fishing rights under the 1854 treaty signed with the Chippewa of Lake Superior?

## ANALYSIS

Conclusions of law are not binding on appellate courts. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

■ Treaties with the Indians "gave no vested rights to individuals" because the government dealt with the tribes and all promises were made to the tribes. *Sac and Fox Indians (Iowa) v. Sac and Fox Indians (Oklahoma),* 220 U.S. 481, 483–84, 31 S.Ct. 473, 474–75, 55 L.Ed. 552 (1911).

Here, the bands of Chippewa that entered into the treaty of 1854 have made an agreement with the State of Minnesota to refrain from exercising any claimed rights to hunt and fish in the ceded territory except as provided in the agreement. The agreement provides for the promulgation of codes, subject to state review and approval. Codes have been adopted and are being enforced by all three bands, despite the Fond du Lac band's official withdrawal from the agreement.

In fact, as appellants noted in their brief, the third person in the canoe with them was an enrolled member of the Fond du Lac band. He was arrested by conservation officers of the Fond du Lac Reservation and charged in band court with a violation of the Fond du Lac band conservation code.

■ At the time of this incident, state law prohibited nighttime spearing between May 1 and February 15. Minn.Stat. § 97C.345 (1988). Appellants were not enrolled band members and had no permit from the band. Consequently, they were arrested by state conservation officers and charged under state law.

The trial court did not err in determining that appellants were not entitled to exercise hunting and fishing rights under the 1854 treaty and, therefore, that the charges against them should not be dismissed.

The trial court did not reach the substantive issue of the nature of any hunting and fishing rights reserved under the 1854 treaty. Nor could it properly have done so given the non-participation of the bands in this case and the consent judgment and orders by the U.S. district court covering this issue approving the agreement of the bands and the state and directing implementation of their agreement in lieu of a litigated determination of rights.

## DECISION

Appellants were not enrolled members of a band which participated in the 1854 treaty. Further, those bands have entered into an agreement with the State of Minnesota to exercise any treaty rights by means of band conservation codes, which are in place and being enforced. Appellants' actions violated both state law and these band codes. Because appellants are not enrolled band members, their actions are subject to state law.

Affirmed.