STATE of Minnesota, Respondent,

v.

Joel Anthony ROY, Appellant.

No. A08–0116.

Court of Appeals of Minnesota.

March 3, 2009.

---

Lori Swanson, Attorney General, St. Paul, MN, Timothy Faver, Beltrami County Attorney, Randall Burg, Assistant County Attorney, Bemidji, MN, for respondent.

Frank Bibeau, Christopher Allery, Anishinabe Legal Services, Cass Lake, MN, for appellant.

Considered and decided by LARKIN, Presiding Judge; HUDSON, Judge; and COLLINS, Judge.*

## OPINION

HUDSON, Judge.

Appellant, an enrolled member of an Indian tribe and a resident of a reservation, challenges his conviction of being a felon in possession of a firearm in violation of Minn.Stat. § 609.165. Because we conclude that Public Law 280 grants the state subject-matter jurisdiction to enforce Minn.Stat. § 609.165 against a tribal member on a reservation, we affirm.

## FACTS

Appellant Joel Anthony Roy is a member of the Minnesota Chippewa Tribe (MCT), enrolled at the Fond du Lac reservation, and resides within the exterior boundaries of the Leech Lake reservation.

In 2002, appellant was convicted of terroristic threats, a felony and a crime of violence. Minn.Stat. §§ 609.173 (prohibiting terroristic threats), 624.712, subd. 5 (defining crime of violence) (2000). Appellant's sentence was stayed, and he was placed on probation. He was discharged from felony probation on the terroristic threats conviction on May 30, 2006.

In October 2005, investigators with the Minnesota Bureau of Criminal Apprehension learned that appellant possessed a semi-automatic assault rifle. Appellant admitted that he possessed the rifle and stored it in a closet at his residence. He

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

gave law enforcement permission to search his home for the rifle, but they did not find the rifle. During the search, appellant received a telephone call from a friend who stated that she had removed the rifle from appellant's residence. The rifle was subsequently retrieved.

At the time, appellant possessed a hunting license from the Leech Lake Band of Ojibwe for use within the boundaries of the Leech Lake reservation.

In June 2006, appellant was charged with being a felon in possession of a firearm, in violation of Minn.Stat. § 609.165. He moved to dismiss the charge for lack of subject-matter jurisdiction, arguing that the state lacked jurisdiction to enforce the statute because appellant is a member of the MCT and the offense occurred within the boundaries of the Leech Lake reservation. The district court denied his motion to dismiss. Appellant renewed his motion, but the district court denied it again. Following a *Lothenbach* trial, appellant was found guilty of being a felon in possession of a firearm. This appeal, challenging the district court's denial of appellant's motion to dismiss for lack of subject-matter jurisdiction, follows.

## ISSUE

Does the state have subject-matter jurisdiction to prosecute a tribal member for a violation on a reservation of the felon-in-possession statute, Minn.Stat. § 609.165?

## ANALYSIS

■ Whether the state has jurisdiction to enforce its laws against a Native American living on an Indian reservation who commits an offense on the reservation is an issue that this court reviews de novo. *State v. Busse,* 644 N.W.2d 79, 82 (Minn. 2002).

■ "State court jurisdiction over matters involving Indians is governed by federal statute or case law." *State v. Stone,* 572 N.W.2d 725, 728 (Minn.1997). Indian tribes retain "attributes of sovereignty over both their members and their territory." *California v. Cabazon Band of Mission Indians (Cabazon),* 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987). This sovereignty is "dependent on, and subordinate to, only the Federal Government, not the States." *Id.* However, "state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided." *Id.* Absent an express congressional grant of jurisdiction, a state can nonetheless exercise jurisdiction over "on-reservation activities by tribal members" if "exceptional circumstances" exist and federal law does not preempt state jurisdiction. *State v. Jones,* 729 N.W.2d 1, 12 (Minn.2007) (Anderson, G.Barry, J., concurring) (citing *Cabazon,* 480 U.S. at 215, 107 S.Ct. at 1091); *State v. R.M.H.,* 617 N.W.2d 55, 60 (Minn.2000) ("[A] state may exercise jurisdiction on a tribal reservation absent express federal consent if the operation of federal law does not preempt it from doing so."). In Public Law 280, Congress expressly granted Minnesota broad criminal and limited civil jurisdiction over specified Indian country within the state.[1] Act of Aug. 15, 1953, Pub.L. No. 83–280, §§ 1162, 1360, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162 (2000), 28 U.S.C. § 1360 (2000)).

## I

### Federal treaty rights

■ Appellant first argues that the broad grant of criminal jurisdiction pursu-

---

1. Minnesota's jurisdiction over Indian country does not include the Red Lake reservation or the Bois Forte reservation at Nett Lake.

*Morgan v.2000 Volkswagen,* 754 N.W.2d 587, 590 n. 4 (Minn.App.2008).

ant to Public Law 280 is limited by section (b) to Public Law 280, as codified at 18 U.S.C. § 1162(b), which provides:

> Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; *or shall deprive any Indian or any Indian tribe, band, or community of any right, privilege, or immunity afforded under Federal treaty, agreement, or statute with respect to hunting, trapping, or fishing* or the control, licensing, or regulation thereof.

(Emphasis added.)

Relying on section 1162(b), appellant asserts that: (1) Minnesota lacks subject-matter jurisdiction to regulate the use of his firearm in a manner inconsistent with federal treaties; (2) under the 1854 and 1855 treaties between the Chippewa and the United States, he has the right to bear arms, especially for the purpose of hunting on a MCT reservation; and thus, (3) the state lacks jurisdiction to enforce Minn. Stat. § 609.165 against him. We disagree.

We note first that appellant's treaty hunting rights do not belong to him as an individual. It is well established that the "[t]reaties with the Indians 'gave no vested rights to individuals' because the government dealt with the tribes and all promises were made to the tribes." *State v. Shabaiash*, 485 N.W.2d 724, 726 (Minn.App. 1992) (quoting *Sac and Fox Indians (Iowa) v. Sac and Fox Indians (Oklahoma)*, 220 U.S. 481, 483, 31 S.Ct. 473, 474,

55 L.Ed. 552 (1911)). Thus, the hunting rights, which appellant argues have been abridged, belong to the tribe as a whole and not to any individual member of the tribe. *United States v. Gallaher*, 275 F.3d 784, 789 (9th Cir.2001); *United States v. Three Winchester 30–30 Caliber Lever Action Carbines*, 504 F.2d 1288, 1292 (7th Cir.1974); *United States v. Fox*, 557 F.Supp.2d 1251, 1255 (D.N.M.2007).

Appellant urges this court to consider *United States v. Gotchnik*, 222 F.3d 506 (8th Cir.2000). There, the Eighth Circuit Court of Appeals considered a law which restricted the use of motorized boats in the Boundary Waters Area, holding that the Chippewa Bands' treaty right to hunt and fish in the area did not include the right to use modern transportation methods to reach the desired hunting and fishing areas within the Boundary Waters Area. As part of its analysis, the court stated that the use of a motorboat as part of preparatory travel "is not part and parcel of the protected act of hunting or fishing, as is the use of a rifle, ice augur, or other hunting or fishing instrument." 222 F.3d at 510. Relying on this language, appellant deduces that his individual right to possess a rifle is absolutely protected because the use of the rifle is "part and parcel of the protected act of hunting." But *Gotchnik* did not involve a state's criminal law of general applicability, nor did it directly address individual Indian hunting rights versus tribal hunting rights, or consider how an individual's hunting rights might be impacted by certain criminal conduct. We, therefore, conclude that appellant's reliance on *Gotchnik* is misplaced.

Additionally, appellant relies on *State v. Clark* to support his contention that the state lacks jurisdiction to regulate his hunting and fishing activities. 282 N.W.2d 902, 909 (Minn.1979). Appellant's reliance

on *Clark* is likewise misplaced because *Clark* dealt with state game and fish laws. In contrast, Minn.Stat. § 609.165 is not a specific hunting regulation or a hunting restriction; rather, it is a generally applicable criminal statute. Any effect that Minn.Stat. § 609.165 has on appellant's ability to possess a firearm is an incidental result of appellant's past criminal conduct; the statute has no effect on the hunting rights of his tribe as a whole. *Gallaher*, 275 F.3d at 789; *Three Winchester 30–30 Caliber Lever Action Carbines*, 504 F.2d at 1292.

Appellant also directs this court to a Wisconsin case, *State v. Lemieux*, 110 Wis.2d 158, 327 N.W.2d 669 (1983). There, the Wisconsin Supreme Court concluded that a statute, which prohibited possession or transportation of a loaded, uncased weapon in a vehicle and prohibited firing a weapon from a vehicle, "regulate[d] hunting" and "impermissibly infringe[d] upon . . . treaty-guaranteed hunting rights." *Id.* at 674. Thus, the court held that the state lacked jurisdiction to enforce the statute against two enrolled members of the Chippewa tribe. *Id.* But *Lemieux* is distinguishable because the statute at issue in *Lemieux* "was primarily a hunting regulation." *State v. Folstrom*, 331 N.W.2d 231, 234 n. 3 (Minn. 1983) (distinguishing *Lemieux* from the facts in *Folstrom*, which involved possession of pistol without permit).

Moreover, the Wisconsin Court of Appeals recently rejected an argument similar to the one that appellant makes here. *State v. Jacobs*, 302 Wis.2d 675, 735 N.W.2d 535 (2007). In *Jacobs*, the Wisconsin Court of Appeals concluded that the circuit court had subject-matter jurisdiction over Jacobs where a Wisconsin statute prohibited Jacobs, who was a tribal member on a reservation, from possessing a firearm. *Id.* at 536. Like appellant here,

Jacobs argued that the state lacked jurisdiction to enforce the statute against him because "he was exercising his tribal hunting rights, protected by treaty and exempt from State regulation." *Id.* The Wisconsin Court of Appeals rejected this argument, noting that the statute in question " . . . is not specifically a hunting restriction or regulation but, rather, a generally applicable, neutral criminal statute." *Id.* The court concluded that any effect the Wisconsin statute had on Jacobs' hunting rights was incidental, explaining that the "application of [the statute] does not, in and of itself, make Jacobs' exercise of treaty hunting rights illegal. Rather, Jacobs' own actions in committing a felony have limited him from fully enjoying those rights." *Id.*

The facts in *Jacobs* mirror those presented here, and because *Lemieux* is distinguishable, we conclude that *Jacobs* is more instructive. The State of Minnesota has not made the exercise of a treaty right illegal. Rather, like the appellant in *Jacobs*, it is appellant's own criminal conduct in committing a crime of violence which has limited his ability to lawfully possess a firearm and collaterally impacted his ability to enjoy his tribe's treaty hunting rights. Accordingly, nothing in section (b) to Public Law 280, as codified at 18 U.S.C. § 1162(b), bars the state from enforcing Minn.Stat. § 609.165 against him.

## II

### Public Law 280

Having addressed appellant's treaty-rights argument, we next consider whether Minnesota has jurisdiction to enforce Minn.Stat. § 609.165 under the general grant of criminal jurisdiction in Public Law 280. To determine whether Minnesota has jurisdiction under Public Law 280 to enforce a state law in Indian country, Minnesota courts use the analytical framework

approved by the United States Supreme Court in *Cabazon*. *Stone*, 572 N.W.2d at 728. *Cabazon* instructs that

> when a State seeks to enforce a law within an Indian reservation under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature, and thus fully applicable to the reservation ... or civil in nature, and applicable only as it may be relevant to private civil litigation in state court.

480 U.S. at 208, 107 S.Ct. at 1088. In making this determination, laws are classified as state "criminal/prohibitory" laws or state "civil/regulatory" laws. *Id.* at 209, 107 S.Ct. at 1088. There is no bright-line distinction between the classifications, and "[t]he applicable state laws governing an activity must be examined in detail before they can be characterized as regulatory or prohibitory." *Id.* at 211 n. 10, 107 S.Ct. at 1089 n. 10.

The Minnesota Supreme Court has adopted a two-step test to determine, under *Cabazon*, whether a law is criminal/prohibitory or civil/regulatory. *Stone*, 572 N.W.2d at 730; *see also Jones*, 729 N.W.2d at 5 (explaining the application of the *Cabazon/Stone* test). The first step is to determine the focus of the analysis, that is, whether the concern is the broad conduct or the specific, narrow conduct at issue. *Stone*, 572 N.W.2d at 730. "[U]nless the narrow conduct presents substantially different or heightened public policy concerns," the broad conduct is the focus. *Id.*

After determining the proper focus, the second step is to determine if the conduct at issue is generally permitted but subject to regulation, or if it is generally prohibited. *Id.* Conduct is civil/regulatory if it is generally permitted, subject to exceptions; and conduct is criminal/prohibitory if it is generally prohibited. *Id.* In addition, "in close cases," courts are "aided by *Caba-zon's* 'shorthand public policy test,' which provides that conduct is criminal if it violates the state's public policy." *Id.* Four nonexclusive factors are used to determine whether an activity violates the state's public criminal policy:

> (1) the extent to which the activity directly threatens physical harm to persons or property or invades the rights of others; (2) the extent to which the law allows for exceptions and exemptions; (3) the blameworthiness of the actor; (4) the nature and severity of the potential penalties for a violation of the law.

*Id.*

Applying this analytical framework, we must determine whether Minn.Stat. § 609.165 is criminal/prohibitory or civil/regulatory.

Recently, we addressed this exact issue in an unpublished opinion in *State v. Bellanger*, No. A06–1907, 2007 WL 4472287, at *1–*2 (Minn.App. Dec. 24, 2007), *review denied* (Minn. Mar. 18, 2008), and concluded that Minn.Stat. § 609.165 was criminal/prohibitory. Although not precedential, we find the reasoning in *Bellanger* to be persuasive, and we adopt it here. *See* Minn.Stat. § 480A.08, subd. 3 (2008) ("[U]npublished opinions of the court of appeals are not precedential."); *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App.1993) (holding that unpublished opinions may be persuasive).

In *Bellanger*, we held that Minn.Stat. § 609.165 was criminal/prohibitory, and that, therefore, under Public Law 280, Minnesota had jurisdiction to enforce Minn.Stat. § 609.165 against a tribal member living on a reservation. *Bellanger*, 2007 WL 4472287, at *2. Applying the *Cabazon/Stone* framework and comparing Minn.Stat. § 609.165 to the statutes involved in two other cases, we concluded that "the narrow conduct is the possession

of firearms by a convicted felon, and the broad conduct is the possession of firearms by citizens in general." *Id.* at *2. In reaching this conclusion, we also relied on the direction given by our supreme court in *State v. Jones,* 729 N.W.2d 1 (Minn. 2007) and *State v. Busse,* 644 N.W.2d 79 (Minn.2002).

In *Busse,* four factors were used to determine whether the narrow conduct at issue presented heightened public policy concerns: (1) the criminal sanction imposed, (2) the direct threat to physical harm, (3) the need for the state to be able to enforce charges of driving after cancellation based on a threat to public safety, and (4) the absence of exceptions. 644 N.W.2d at 87. Examining these four factors in *Bellanger,* we concluded that the narrow conduct of felons possessing firearms presented heightened public policy concerns and that the narrow conduct should, therefore, be the focus of the analysis. 2007 WL 4472287, at *2. We explained:

> The criminal sanction imposed is imprisonment of not more than 15 years, a fine of not more than $30,000, or both. Minn.Stat. § 609.165, subd. 1b(a) (2004). The direct threat to physical harm by having convicted felons possess firearms is obvious, as is the need for the state to be able to enforce the prohibition on felons' possession of firearms. Finally, the only exception is for felons to whom the court has restored the right to possess firearms. Minn.Stat. § 609.165, subd. 1d (2004).

*Id.*

Moreover, in *Jones,* the Minnesota Supreme Court examined the legislative history of the statute at issue there and noted that the public policy concerns had grown over time, as evidenced by the increased offense grade. 729 N.W.2d at 7. Likewise, the public policy concerns surrounding felons possessing firearms has increased over time, as evidenced by the fact that the legislature changed the ten-years-after-expiration-of-sentence prohibition on convicted felons possessing firearms to a lifetime prohibition. *Compare* Minn.Stat. § 624.713, subd. 1(b) (2002) *with* Minn. Stat. § 624.713, subd. 1(b) (Supp.2003).

*Busse, Jones,* and the reasoning in *Bellanger* lead us to conclude that the proper focus of our analysis is on the narrow conduct because the possession of a firearm by a felon presents substantially different or heightened public policy concerns.

Having determined the proper focus, the next step in our analysis requires us to determine whether the conduct is generally permitted or generally prohibited. *Stone,* 572 N.W.2d at 730. The conduct at issue here is generally prohibited, because, as we reasoned in *Bellanger,* "the only exception is for felons to whom the court has restored the right to possess firearms." *Bellanger,* 2007 WL 4472287, at *2 (citing Minn.Stat. § 609.165, subd. 1d). Therefore, we hold that Minn.Stat. § 609.165 is criminal/prohibitory.

Our holding that Minn.Stat. § 609.165 is criminal/prohibitory is also supported by application of *Cabazon's* shorthand public policy test. *Stone,* 572 N.W.2d at 730 (listing four nonexclusive factors of *Cabazon's* shorthand public policy test). First, the conduct at issue "directly threatens physical harm to persons or property or invades the rights of others." *Id.* The statute prohibiting individuals convicted of crimes of violence from possessing firearms is " 'designed to protect the public safety by keeping firearms out of the hands of convicted criminals who have committed crimes which, in the legislature's judgment, are indications of future dangerousness.' " *State v. Anderson,* 720 N.W.2d 854, 861 (Minn.App.2006) (quoting

*State v. Moon*, 463 N.W.2d 517, 520 (Minn. 1990)), aff'd, 733 N.W.2d 128 (Minn.2007). And we reiterate our comments in *Bellanger*, in that "[t]he direct threat to physical harm by having convicted felons possess firearms is obvious, as is the need for the state to be able to enforce the prohibition on felons' possession of firearms." 2007 WL 4472287, at *2. Second, as previously noted, the exception to the prohibition is limited. Third, appellant is blameworthy; he was convicted of a crime of violence, and he was therefore unable to lawfully possess a firearm. Moreover, appellant has not suggested that he was unaware of this prohibition or that he petitioned for judicial restoration of his ability to possess a firearm. The fourth factor in the shorthand public policy test is the nature and severity of the potential penalties for violation of the law. *Stone*, 572 N.W.2d at 730. A person convicted of a crime of violence and who possesses a firearm is guilty of a felony, which is punishable with "imprisonment for not more than 15 years or to payment of a fine of not more than $30,000, or both." Minn.Stat. § 609.165, subd. 1b(a). These factors, viewed together, demonstrate that possession of a firearm by a felon who was convicted of a crime of violence violates the state's criminal public policy.

The Minnesota Supreme Court's decision in *Folstrom* further supports our conclusion that Minn.Stat. § 609.165 is criminal/prohibitory. There, the court held that Minnesota had jurisdiction to enforce a statute that prohibited carrying a pistol without a permit against the appellant, a member of the White Earth Band of Chippewa Tribes, even though the offense occurred while the appellant was in Indian country. *Folstrom*, 331 N.W.2d at 234.

*Folstrom* is still good law, as our supreme court explained in *Stone:*

> *State v. Folstrom*, 331 N.W.2d 231 (1983), decided before *Cabazon*, held that Minn.Stat. § 624.714 (1982), prohibiting carrying a pistol without a permit, was a criminal law for purposes of Public Law 280. This determination was based on the fact that the law was located in the criminal code and contained a criminal penalty. However, in dicta, this court also found that the law would be criminal under the prohibitory/regulatory (*Cabazon*) test. *Id.* at 233, fn. 1. Therefore, *Folstrom* remains good law.

572 N.W.2d at 730 n. 4. *Folstrom* is instructive because the statute at issue in *Folstrom* was similar to the one at issue here, in that both prohibit possession of a firearm under certain circumstances.

Based on the application of the *Cabazon/Stone* analytical framework and the persuasive reasoning in *Bellanger*, we conclude that Minn.Stat. § 609.165 is criminal/prohibitory and accordingly, under Public Law 280, Minnesota has jurisdiction to enforce Minn.Stat. § 609.165 against appellant.

## III

Finally, appellant appears to suggest that our jurisdictional analysis must take into account *R.M.H.*, 617 N.W.2d 55, the so-called *Duro* fix, and the United States Supreme Court's subsequent decision in *United States v. Lara*, 541 U.S. 193, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004).

In *R.M.H.*, the Minnesota Supreme Court addressed the issue of whether the state has jurisdiction to enforce its speeding and driver's license laws against a nonmember Indian.[2] 617 N.W.2d at 57. The court determined, first, that Congress

---

**2.** The court in *R.M.H.* defined a "nonmember Indian" as "an Indian who is not an enrolled member of the governing tribe." *R.M.H.*, 617 N.W.2d at 61.

had not expressly consented to Minnesota's jurisdiction over R.M.H.'s traffic offenses, explaining that the offenses were "civil/regulatory" and did not fit with the express grant of jurisdiction to Minnesota in Public Law 280. *Id.* at 60. Next, the court considered whether Minnesota could exercise jurisdiction absent an express grant by determining whether federal law preempted state jurisdiction. *Id.* The court explained that the "regulation of nonmember Indians warrants different consideration than does regulation of member Indians," *id.* at 63, and that concerns related to tribal sovereignty are strongest when a state threatens the "tribal self-government, self-sufficiency, and economic development," *id.* at 64–65. The court concluded that regulation of traffic offenses against nonmembers did not threaten the tribal interest in self-governance, economic development, or self-sufficiency. *Id.* at 65. Finally, the court noted that federal law does not regulate traffic offenses in a manner that precludes state jurisdiction. *Id.* Thus, the supreme court concluded that "Minnesota's interests, when compared with the federal interests, are more than sufficient to justify state jurisdiction over civil/regulatory traffic offenses committed on a state highway on an Indian reservation by an Indian who is not an enrolled member of the governing tribe." *Id.*

In *R.M.H.*, the Minnesota Supreme Court relied, in part, on the United States Supreme Court's decision in *Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990). *Id.* at 61–65. In *Duro*, the United States Supreme Court held that a tribe did not possess inherent or sovereign authority to prosecute a nonmember Indian. 495 U.S. at 691–92, 110 S.Ct. at 2063.

Soon after *Duro*, Congress enacted new legislation authorizing tribes to exercise criminal jurisdiction over all Indians, including nonmembers. *Lara*, 541 U.S. at 197–98, 124 S.Ct. at 1632. Subsequently, the United States Supreme Court recognized that *Duro*, along with several other decisions, was no longer determinative in light of the newly enacted legislation which "relax[ed] restrictions on the bounds of the inherent tribal [prosecutorial] authority that the United States recognizes." *Id.* at 207, 124 S.Ct. at 1637.

Relying on *Lara*, appellant argues that *R.M.H.* is no longer good law. But appellant's argument is not clear or thoroughly developed. For example, appellant does not explain why his argument is relevant in light of our conclusion that Minn.Stat. § 609.165 is criminal/prohibitory. And to the extent that appellant's claim is that the legislation passed in response to *Duro* divested the state of Minnesota of criminal jurisdiction over offenses committed by or against Indians in Indian country, we note that appellant has not cited any authority establishing that 18 U.S.C. § 1162 is no longer viable. Indeed, there is persuasive authority to the contrary. *See United States v. Person*, 427 F.Supp.2d 894, 904–05 (D.Minn.2006) (rejecting an argument that section 1162 was no longer viable in light of the legislation passed in response to *Duro*). Accordingly, we reject appellant's argument and defer to the Minnesota Supreme Court for any re-evaluation of whether *R.M.H.* remains good law. *See Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) ("The task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987).

## DECISION

The state has subject-matter jurisdiction under Public Law 280 to enforce Minn. Stat. § 609.165 against a tribal member on

a reservation because the enforcement of Minn.Stat. § 609.165 does not affect the collective hunting rights of a tribe; appellant's inability to lawfully possess a weapon is the incidental result of his own conduct; and because Minn.Stat. § 609.165 is criminal/prohibitory.

**Affirmed.**